# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) No.: *SA*CV 15-00394-AG(RNBx) ) |
| v. | ) **CONSENT DECREE FOR** ) **PERMANENT INJUNCTION AND** ) **CIVIL PENALTY** |
| PLAZA BANK, | ) |
| Defendant. | ) |

**WHEREAS,** plaintiff United States of America (the "United States") commenced this action against defendant Plaza Bank ("Plaza," "Bank," or "Defendant") by filing a civil Complaint seeking a civil money penalty pursuant to the Financial Institutions Reform, Recovery and Enforcement Act, 12 U.S.C. § 1833a ("FIRREA") and an injunction pursuant to 18 U.S.C. § 1345 and the court's equitable powers;

**WHEREAS,** Defendant waives service of the Complaint;

**WHEREAS,** the United States and Defendant stipulate to the Court's entry of this Consent Decree for Permanent Injunction and Civil Penalty ("Consent Decree") to resolve the claims in the Complaint.

**NOW, THEREFORE**, the parties hereby **AGREE** and it is **ORDERED** as follows:

## I.   FINDINGS

A.   The Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1345 (United States as plaintiff). Venue is proper in the Central District of California pursuant to 28 U.S.C. § 1391(b) because Defendant operates and maintains management offices and operations

centers in this district, and a substantial part of the events or omissions giving rise to the claims alleged in the Complaint occurred in this district.

B. The United States alleges in the Complaint violations of FIRREA, 12 U.S.C. § 1833a and 18 U.S.C. § 1345.

C. This Consent Decree is neither an admission of liability by Defendant, nor a concession by the United States that its claims are not well founded. Only for purposes of this action, Defendant admits that the Court has jurisdiction as to Defendant and as to this action.

D. Defendant knowingly and voluntarily waives any claim that it may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action through the date of this Consent Decree, and agrees to bear its own costs and attorneys' fees. Should the United States bring, and prevail in, a contempt action to enforce the terms of this Consent Decree, Defendant shall, in addition to other remedies, reimburse the United States for its attorneys' fees, investigational expenses, expert witness fees, travel expenses incurred by attorneys and witnesses, administrative and court costs, and any other costs or fees, including overhead, related to such contempt proceedings.

E. Defendant waives all rights to appeal or otherwise challenge or contest the validity of this Consent Decree.

## II. DEFINITIONS

For purposes of this Consent Decree, the following definitions apply:

A. "Automated Clearinghouse" or "ACH" means a facility that processes debit and credit transfers under rules established by a Federal Reserve Bank operating circular on automated clearinghouse items or under rules of an automated clearinghouse association, such as NACHA, as further defined in and governed by Regulation CC, as amended, 12 C.F.R. Part 229.

B. "Internet-based Business" means any entity that markets, offers, or provides products or services, and that accepts authorizations for transactions from

2

consumers, exclusively via the Internet.

C. "Merchant" means any entity that markets, offers, or provides products or services, and that accepts authorizations for financial transactions from consumers.

D. "Originating Depository Financial Institution" or "ODFI" means a depository financial institution that has made an arrangement with another entity to transmit ACH, RCC, or RCPO entries into a payment system on behalf of that entity or another entity, or transmits such entries into a payment system on its own behalf.

E. "Remotely-created Check" or "RCC" means a check that is not created by the paying bank and that does not bear a signature applied, or purported to be applied, by the person on whose financial account the check is drawn, as further defined in and governed by Regulation CC, as amended, 12 C.F.R. Part 229. A Remotely-created Check is often also referred to as a "demand draft," "bank draft," "bank check," or "preauthorized draft." For purposes of this definition, an RCC originates as a paper-based transaction, and can be processed subsequently through electronic means (such as through check imaging or scanning), or through non-electronic means.

F. "Remotely-created Payment Order" or "RCPO" means a payment instruction or order drawn on a person's financial account that is initiated or created by the payee and that does not bear a signature applied, or purported to be applied, by the person on whose financial account the order is drawn, and which is deposited into or cleared through the check clearing system. For purposes of this definition, unlike a Remotely-created Check, a Remotely-created Payment Order does not originate as a paper-based transaction. A RCPO is created when a seller, Merchant, payment processor, or other entity enters financial account and routing numbers into an electronic check template that is converted into an electronic file for deposit into the check clearing system.

G. "Return Rate Threshold" means, for any Merchant with more than 50 debit transactions in a calendar month, a debit return ratio during that calendar month of:

    1. one-half of one percent (0.5%) for Unauthorized returns (NACHA Reason Codes R05, R07, R10, R29, R37, and R51);

    2. three percent (3%) for Account Data Quality returns (NACHA Return Reason Codes R03, R04, or R20); or

    3. fifteen percent (15%) for returns for any reason (excluding RCK entries).

H. "Telemarketing" means a plan, program, or campaign which is conducted to induce the purchase of goods or services or a charitable contribution by use of one or more outbound telephone calls, whether or not covered by the Federal Trade Commission Telemarketing Sales Rule, 16 C.F.R. Part 310.

I. "Third-party Payment Processor" means: (a) a non-financial institution entity or person that is a customer or vendor of a financial institution and that holds a deposit account at that financial institution directly or on behalf of its Merchant clients (except entities and persons that have an express agency agreement with a financial institution); (b) that provides, directly or indirectly, the means used to debit accounts through credit cards, the ACH network, or the check payment system, through that financial institution acting as the ODFI; and (c) that is, in whole or in part, in the business of (i) providing the means to transmit money from a financial institution to any Merchant; (ii) providing the means to transmit transaction data from Merchants to financial institutions; (iii) transmitting, clearing, settling, or distributing proceeds of transactions from financial institutions to Merchants; or (iv) processing returned transactions for Merchants.  Provided, however, that "Third-party Payment Processor" shall not include entities whose primary business is: (1) providing management services for homeowners' associations; (2) providing payroll services; (3) providing medical billing services;

or (4) providing real estate or property management services.

### III. PROHIBITED CONDUCT

**IT IS ORDERED** that the Bank, its officers, agents, employees, contractors, and attorneys, and all other persons in active concert or participation with any of them who receive actual notice of this Consent Decree, whether acting directly or indirectly, are, in connection with any activities conducted by or through the Bank, **PERMANENTLY RESTRAINED** and **ENJOINED** from:

A. Providing bank accounts or banking services to any Third-party Payment Processor, except where the Bank certifies to the United States before the start of banking activity, and quarterly thereafter, in accordance with Section IV.C, that the Third-party Payment Processor is: (i) licensed as a money transmitter in the state(s) into and from which money is transferred, or has provided to the Bank documentation created by state licensing authorities stating that no state licensing is required; and (ii) registered with the Financial Crimes Enforcement Network of the U.S. Department of the Treasury ("FinCEN") as a "Money Services Business," or has provided to the Bank documentation from FinCEN stating that no registration is required.

B. Failing to establish, maintain, implement, enforce, or monitor compliance with policies, procedures, and controls requiring all Bank directors, officers, or agents to disclose to the Bank's Board of Directors in writing any conflicts of interests with any Third-party Payment Processor or employee thereof for which the Bank directly or indirectly provides banking services or a bank account.

C. Delegating to a Third-party Payment Processor responsibility to conduct due diligence (including but not limited to Customer Identification Program requirements under 31 C.F.R. § 1020 et seq.) and monitoring of the Third-party Payment Processor's Merchants, or conducting due diligence and monitoring in any respect differently than would be required if the Merchants were

direct customers of the Bank.

      D.      Providing banking accounts, banking services, ACH or credit card services, access, or processing, to any Merchant through a Third-party Payment Processor, except where the Bank, in advance of providing bank accounts or banking services and quarterly thereafter, has:

           1.      completed all due diligence and underwriting of the Merchant as would be required of the Bank if the Merchant was a direct customer of the Bank;

           2.      established, after reasonable inquiry, in good faith, and to the best of the Bank's ability and knowledge, that the Merchant is not engaged in fraudulent, unfair, deceptive, or abusive business practices against consumers in violation of federal law or any such law of the state(s) (or tribal territory) in which the Merchant is located, and any such law of the state(s) (or tribal territories) in which the Merchant's consumers are located;

           3.      established, after reasonable inquiry, in good faith, and to the best of the Bank's ability and knowledge, that the Merchant is in compliance with: (a) all licensing, registration, and other legal standards and requirements of the state(s) in which the Merchant is located (or if the Bank has independently established that the Merchant is a tribal business, exclusively owned, operated by, and benefitting a federally-recognized sovereign Native American nation, the laws of that Native American nation); (b) all licensing, registration and other legal standards and requirements of the states (or tribal territories) in which each of the Merchant's consumers reside; and (c) the rules of NACHA, the Electronic Payments Association; and

    4.  memorialized in writing the conclusions of the activities in subparagraphs 1 through 3, and notified the United States that such information is available to the United States for inspection.

 E. Providing banking accounts, banking services, ACH or credit card services, access, or processing to any Third-party Payment Processor that processes payments for any Merchant that has surpassed the Return Rate Threshold for any one month period; unless, within 45 days after the Merchant has surpassed the Return Rate Threshold, the Bank certifies to the United States (in accordance with Section IV.C, below) that the Bank has:

    1.  completed all due diligence and underwriting of the Merchant as would be required of the Bank if the Merchant was a direct customer of the Bank;

    2.  established, after reasonable inquiry, in good faith, and to the best of the Bank's ability and knowledge, that the Merchant is not engaged in fraudulent, unfair, deceptive, or abusive business practices against consumers in violation of federal law or any such law of the state(s) (or tribal territory) in which the Merchant is located, and any such law of the state(s) (or tribal territories) in which the Merchant's consumers are located;

    3.  sampled consumers by: (a) individually or jointly with the Merchant, directly communicating by telephone with no fewer than twenty-five consumers of the Merchant selected by the Bank who purportedly purchased the Merchant's goods or services within the previous three months, and inquired of the consumers whether the consumers knowingly authorized debits by the Merchant and whether the consumers believe they were the victim of fraud or abusive practices by the Merchant; and

               provided the Merchant's name and address, and the 25 or more consumers' names and telephone numbers, to the United States; or (b) another method of consumer sampling agreed upon in writing by the Bank and the United States;

4.   memorialized in writing the conclusions of the research and due diligence required under this paragraph; and

5.   notified the Bank's Board of Directors of the Merchant's identity, due diligence results, total and unauthorized return rate history, and results of consumer sampling.

If the Bank establishes that the Merchant has been engaged in fraudulent, unfair, deceptive, or abusive conduct against consumers, or elects not to conduct the activities in subparagraphs 1 through 5 and instead to discontinue providing bank accounts or banking services to such Merchant, the Bank shall, within three business days, cease all debiting of consumers' bank accounts, and shall terminate all banking services to such Merchant of the Third-party Payment Processor no later than 45 days after the Merchant of the Third-party Payment Processor has surpassed the Return Rate Threshold, except that nothing in this Consent Decree shall prevent the Bank from holding funds from such Merchant, for up to 12 months, to be used to cover returned items by consumers who conducted transactions with such Merchant.

    F.   As an ODFI, accepting from a Third-party Payment Processor, directly or indirectly through its customer, any RCCs or RCPOs in connection with Telemarketing or Internet-based Businesses.

    G.   Processing payments or providing banking services to any Third-party Payment Processor that the Bank suspects or should reasonably suspect is engaged in any fraudulent, abusive, misleading, or deceptive practices involving consumers.

### IV.   CERTIFICATION REQUIREMENTS

    A.   As long as the Bank is not providing bank accounts or banking

services to any Third-party Payment Processor, the Bank shall certify to these facts, on an annual basis, in the form of the "Absence of Third-party Payment Processor Certification" attached hereto as Exhibit A.

  B. If the Bank begins to provide bank accounts or banking services to any Third-party Payment Processor, then within 60 days following the date on which the Bank first provides such accounts or services, and continuing at month-end every six months thereafter, the Bank shall certify that it is in compliance with this Consent Decree.  The certification shall be in the form of the "Consent Decree Compliance Certification" attached hereto as Exhibit B.

  C. All certifications required under this Consent Decree shall be in writing, executed by a Bank official with authority to bind the Bank, and executed in accordance with 28 U.S.C. § 1746.  All certifications required under this Consent Decree shall be delivered to the United States within fifteen days of the certification in the manner specified in Section XV below.

  D. Five years after the Court's entry of this Consent Decree, the Bank shall not be required to certify compliance with this Consent Decree.

  E. After ten years from the date on which the Bank stopped processing transactions for any Third-party Payment Processor (but in no case earlier than June 1, 2020), this Consent Decree shall automatically terminate, provided that during this time period the Bank has not provided bank accounts or banking services to any Third-party Payment Processor, except as provided in Section XIV of this Consent Decree.

### V. CIVIL MONEY PENALTY

**IT IS FURTHER ORDERED** that:

  A. The Clerk is hereby ordered to enter judgment in the amount of One Million Dollars ($1,000,000) (the "Penalty Amount") in favor of the United States and against Defendant as a civil money penalty.

  B. The Bank shall pay the Penalty Amount to the United States by

payment to the United States Treasury within seven days of the Court's entry of this Consent Decree by electronic funds transfer in accordance with instructions to be provided by a representative of the United States.

### VI. PAYMENT IN LIEU OF ADMINISTRATIVE FORFEITURE

**IT IS FURTHER ORDERED** that:

A. The Bank shall pay Two Hundred Twenty-Five Thousand Dollars ($225,000) (the "Forfeiture Amount") to the United States Postal Inspection Service's Consumer Fraud Fund as proceeds of the conduct described in the Complaint. Such payment must be made within seven days of the Court's entry of this Consent Decree by electronic funds transfer in accordance with instructions to be provided by a representative of the United States. Such funds shall be moneys in which the Bank possesses exclusive ownership interest.

B. The Bank relinquishes all right, title, and interest in the funds described in Section VI.A, above. The Bank agrees and states that the funds described in Section VI.A, above, are forfeitable under 18 U.S.C. § 981(a)(1)(C) without need for further proceedings in support of such payment or forfeiture.

### VII. ADDITIONAL MONETARY PROVISIONS

**IT IS FURTHER ORDERED** that:

A. The Bank relinquishes dominion and all legal and equitable right, title, and interest in all assets transferred pursuant to this Consent Decree and may not seek the return of any assets.

B. In the event that the Bank defaults on the Civil Money Penalty provision of Section V, or the Payment in Lieu of Administrative Forfeiture provision of Section VI, the facts alleged in the Complaint will be taken as true in any subsequent civil litigation by or on behalf of the United States to enforce its right to any payment or forfeiture.

C. The Bank acknowledges that its Taxpayer Identification Number, which the Bank shall submit to the United States, may be used to collect and report

on any delinquent amount arising out of this Consent Decree, in accordance with 31 U.S.C. § 7701.

## VIII. COOPERATION IN FURTHER INVESTIGATIONS

**IT IS FURTHER ORDERED** that, for a period ending five years after the date of the Court's entry of the Consent Decree, the Bank shall cooperate fully and truthfully with the United States in any civil, criminal, and/or administrative investigations that involve the Bank's former officers, directors, and employees, the Bank's former Third-party Payment Processor, and the Bank's former Third-party Payment Processor's Merchants. Upon reasonable notice, the Bank shall encourage and not impair the cooperation of its directors, officers, and employees, and shall not impair the cooperation of former directors, officers, and employees, for interviews and testimony, consistent with the rights and privileges of such individuals.

The Bank's cooperation requires that it incur only reasonable costs or burden associated with its cooperation, and shall include: (1) promptly providing to the United States upon request, without formal legal process (subject to any restrictions imposed by applicable law), all non-privileged documents, reports, memoranda of interviews, and records in its possession, custody, or control, concerning any matter under investigation by the United States, and (2) for a period of time ending three years after the Court's entry of the Consent Decree, providing the Bank's officers, directors, and employees to be interviewed by the United States in Washington, D.C., or another mutually agreed upon location, without waiver of the employees' individual rights or privileges.

## IX. SCOPE OF RESOLUTION

**IT IS FURTHER ORDERED** that this Consent Decree resolves and releases only the United States' civil claims against the Bank under FIRREA, 12 U.S.C. § 1833a, and 18 U.S.C. § 1345, in connection with the conduct alleged in the Complaint.

The Consent Decree does not release, or in any manner affect, other actual or potential claims of the United States, including the following, which are specifically reserved: (1) any criminal liability against the Bank, its officers, directors, or employees, or any other individual or corporate entity; (2) any civil liability against any of the Bank's current or former officers, directors, or employees, or any other individual or corporate entity not named as a defendant in the Complaint; (3) any liability arising under Title 26, U.S. Code (Internal Revenue Code); (4) any administrative liability, including the suspension and debarment rights of any federal agency; and (5) any liability to the United States (or its agencies) whatsoever for any conduct other than civil claims against the Bank under FIRREA, 12 U.S.C. § 1833a and 18 U.S.C.§ 1345.

Nothing in this section or any other provision of this Consent Decree constitutes an agreement by the United States concerning the characterization of the civil money penalty for purposes of the Internal Revenue laws, Title 26 of the United States Code.

The injunctive provisions of this Consent Decree are intended to supplement, and not supersede, due diligence and other legal requirements imposed by state and federal law.

## X. CONSENT DECREE ACKNOWLEDGMENTS

**IT IS FURTHER ORDERED** that the Bank obtain acknowledgments of receipt of this Consent Decree:

A.  The Bank, within seven days of the Court's entry of this Consent Decree, must submit to the United States an acknowledgment of receipt of this Consent Decree.

B.  The Bank, within fourteen days of the Court's entry of this Consent Decree, must deliver a copy of this Consent Decree to each Bank executive officer, director, and and/or senior manager.

C.  If the Bank begins to provide bank accounts or banking services to

any Third-party Payment Processor, then for five years after the Court's entry of this Consent Decree, the Bank must deliver a copy of this Consent Decree to: (1) each executive officer, director, and/or manager who has not otherwise received a copy of this Consent Decree; (2) each employee, agent, and representative who reviews or approves agreements and applications of Third-party Payment Processors with which the Bank transacts business, or the Merchants with which the Third-party Payment Processor does business; and (3) any business entity resulting from any change in structure as set forth in Section XII -- Compliance Reporting.  Delivery must occur within fourteen days of the time they assume their responsibilities covered by Section X.C.

  D. From each individual or entity to which the Bank delivers a copy of this Consent Decree, the Bank must obtain within 30 days a signed and dated acknowledgment of receipt of this Consent Decree.

## XI. COMPLIANCE MONITORING

**IT IS FURTHER ORDERED** that, for the purpose of monitoring the Bank's compliance with this Consent Decree, the Bank must, within 30 days of receipt of request from a representative of the United States Department of Justice: (a) submit additional compliance reports or other requested information; (b) appear for depositions; and (c) produce documents for inspection.  Nothing in this section shall preclude the Bank from redacting from such documents any materials it reasonably believes is protected by the attorney work-product doctrine, attorney-client privilege, or other applicable privilege.

## XII. COMPLIANCE REPORTING

**IT IS FURTHER ORDERED** that the Bank make timely submissions to the United States:

  A. One year after the Court's entry of this Consent Decree, the Bank must submit to the United States a compliance report in which it: (a) designates the primary physical, postal, and email address and telephone number, as designated

points of contact, which representatives of the United States may use to communicate with the Bank; (b) provides a copy of the Absence of Third-party Payment Processor Certification or describes in detail whether and how the Bank is in compliance with each Section of this Consent Decree; and (c) provides a copy of each Consent Decree Acknowledgment described in Section X of this Consent Decree, unless previously submitted to the United States.

      B.    For five years after the Court's entry of this Consent Decree, the Bank must submit a compliance notice within 30 days after any change in the following: (a) any designated point of contact; and (b) the structure of the Bank or any entity that the Bank has any ownership interest in or that it controls directly or indirectly that may affect compliance obligations arising under this Consent Decree, including: creation, merger, sale, or dissolution of the entity or any subsidiary or parent that engages in any acts or practices subject to this Consent Decree.

      C.    The Bank must submit to the United States notice of the filing of any bankruptcy petition, insolvency proceeding, or any similar proceeding by or against such the Bank within 30 days of its filing.

### XIII.    RECORDKEEPING

**IT IS FURTHER ORDERED** that the Bank must retain the following records created during or relating to the time period of January 1, 2008, to the present, for five (5) years from the Court's entry of the Consent Decree:

      A.    All records relating to Third-party Payment Processors with which the Bank has done business, and the Merchants that have used such processors to transact business through the Bank's facilities;

      B.    Personnel records showing, for each person who corresponded with, reviewed, or authorized, transactions through Third-party Payment Processors, whether as an employee or acting in another capacity on behalf of the Bank, that person's: name; addresses; telephone numbers; job title or position; dates of service; and (if applicable) the reason for termination;

  C. Records of all returns for transactions processed through Third-party Payment Processors;

  D. Records of all consumer complaints, whether received directly or indirectly, such as through a third party, and any response; and

  E. All records necessary to demonstrate full compliance with each provision of this Consent Decree, including all submissions to the United States.

  F. The records retention requirements of this Section are in addition to, and not in lieu of, any other requirements imposed by state or federal law.

### XIV. ACQUISITIONS INVOLVING ANOTHER INSURED DEPOSITORY INSTITUTION

  A. If the Bank, directly or indirectly, acquires another federally-insured depository institution ("Acquired Bank"), then the resulting combined entity shall either:

  (1) submit to the United States Department of Justice (the "Department") a certification executed by an official with authority to bind the Bank that the Acquired Bank is not providing bank accounts or banking services to any Third-party Payment Processor as of the date of the closing of the transaction; or

  (2) submit to the Department and the Bank's primary federal regulator a plan within 60 days of closing of the transaction, describing how the resulting combined entity will either:

   (a) stop providing bank accounts and banking services to any Third-party Payment Processor; or

   (b) come into compliance with the remaining terms of this Consent Decree.

  If within 60 days the Department advises the Bank in writing of its objection to this plan, the Bank must submit a revised plan to the Department and the Bank's primary federal regulator within 60 days thereafter. If within 60

days of receiving this revised plan, the Department advises the Bank in writing of its objection to the revised plan, the Bank shall have 90 days thereafter to come into compliance with this Consent Decree.

B.    If the Bank, directly or indirectly, is acquired by a larger federally-insured depository institution that is not otherwise affiliated with the Bank ("Acquiring Bank"), and if the Bank has not provided bank accounts or banking services to any Third-party Payment Processor for three years prior to being acquired by the Acquiring Bank, then this Consent Decree will automatically terminate at the time the Bank is acquired.  If the Bank is acquired by an Acquiring Bank, and within the preceding three years the Bank has acquired a bank that provided bank accounts or banking services to any Third-party Payment Processor, then this Consent Decree will terminate at the time the Bank is acquired by the Acquiring Bank provided that the Bank stopped providing bank accounts and banking services to Third-party Payment Processor in accordance with Section XIV.A.1 or Section XIV.A.2.a.

## XV.    SUBMISSIONS TO THE UNITED STATES

**IT IS FURTHER ORDERED** that all submissions to the United States Department of Justice required under this Consent Decree shall be in writing and delivered by hand or overnight courier to: Director, Consumer Protection Branch, U.S. Department of Justice, 450 Fifth Street, Washington, D.C. 20001.  The Bank expressly acknowledges that the information obtained by the United States in connection with its investigation of the Bank, including information submitted by the Bank to the United States pursuant to this Consent Decree, may be shared for official purposes with federal, state, and local law enforcement, and other agencies and entities of the United States (including but not limited to the Federal Trade Commission, the Consumer Finance Protection Bureau, and other bank regulatory agencies).

### XVI. **MODIFICATION OF THE CONSENT DECREE**

The Bank and/or the United States may petition the Court for modification of the Consent Decree.

### XVII. **RETENTION OF JURISDICTION**

**IT IS FURTHER ORDERED** that this Court retains exclusive jurisdiction of this matter for purposes of construction, modification, and enforcement of this Consent Decree.

**ORDERED** this 30th day of March, 2015.

_____

**UNITED STATES DISTRICT JUDGE**
**ANDREW J GUILFORD**

**CONSENTED TO BY:**


_____
**HARRY E. (GENE) GALLOWAY**
President and Chief Executive Officer, Plaza Bank
On behalf of Plaza Bank


_____
**D. JEAN VETA** (pending admission *pro hac vice*)
**HEATHER L. FINSTUEN** (pending admission *pro hac vice*)
**THOMAS R. BRUGATO** (pending admission)
Covington & Burling LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 2000
Telephone: (202) 662-5294
Facsimile: (202) 778-5294
E-mail: JVeta@cov.com
Attorneys for Plaza Bank


_____
**MICHAEL S. BLUME**
Director, Consumer Protection Branch
**RICHARD GOLDBERG**
Assistant Director, Consumer Protection Branch
**SANG H. LEE**
Trial Attorney, Consumer Protection Branch
United States Department of Justice
450 Fifth Street, NW, Suite 6400 South
Washington, D.C. 20001
Telephone: (202) 616-0219
Facsimile: (202) 514-8742
E-mail: Sang.H.Lee@usdoj.gov
On behalf of the United States of America

**CONSENTED TO BY:**

_____
**STEPHANIE K. YONEKURA**
Acting United States Attorney
**LEON W. WEIDMAN**
Assistant United States Attorney
Chief, Civil Division
**ANOIEL KHORSHID**
Assistant United States Attorney (California Bar #223912)
300 N. Los Angeles Street, Suite 7516
Los Angeles, California 90012
Telephone: (213) 894-6086
Facsimile: (213) 894-7819
Email: Anoiel.Khorshid@usdoj.gov

On behalf of the United States of America